UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Braeden Carleton,

     Plaintiff,

     v.

Killington/Pico Ski Resort Partners, LLC, and
Aquatic Development Group,

     Defendants.

_____

Killington/Pico Ski Resort Partners, LLC,

     Cross Claimant,

     v.

Aquatic Development Group,

     Cross Defendant.

Civil Action No. 2:24–cv–20

**OPINION AND ORDER**
(Doc. 39)

In October 2023, Plaintiff Braeden Carleton filed this action against Defendants

Killington/Pico Ski Resort Partners, LLC (Killington)[1] and Aquatic Development Group (ADG),

seeking damages for injuries he sustained in August 2017 while riding the Beast Mountain

Coaster (BMC) at Killington Mountain Resort.  The Complaint asserts a claim against Killington

for "Failure to Instruct and Screen," and a claim against ADG for "Product Liability for Design

Defect."  (Doc. 6 at 2, 3.)  ADG timely filed its Answer to the Complaint in December 2023.

---

[1] The caption of the Complaint lists this Defendant as "Killington Mountain Resort" (*see* Doc. 6 at 1). Plaintiff recently amended the case caption to list Defendant as "Killington/Pico Ski Resort Partners, LLC" (*see* ECF No. 42).

(Doc. 19.)  After ADG removed the case from state court to federal court, Killington filed its

Answer (Doc. 8) and a Cross-Claim against ADG asserting claims of contractual indemnity,

implied indemnity, and breach of warranty (Doc. 9).  ADG filed its Response to the Cross-Claim

in February 2024.  (Doc. 27.)

According to the Complaint, the BMC car Carleton was riding in stopped midway down

the track because another car stopped on the track in front of his car.  A third BMC car then

collided with the rear of his car, causing Carleton's upper body and head to lunge forward and

strike the head of the child in front of him.  (Doc. 6 at 2, ¶¶ 9–11.)  The Complaint alleges that

ADG designed, manufactured, and sold the BMC to Killington, and that the BMC was

defectively designed because it "lack[ed] . . . a fail-safe collision prevention mechanism, as well

as adequate safety restraints for passengers," making it "dangerous to intended and foreseeable

users."  (*Id.* at 3, ¶ 21.)  The Complaint further alleges that the BMC's design defect was "an

actual, direct[,] and proximate cause of [Carleton's] injury."  (*Id.* ¶ 22.)

During the course of initial discovery disclosures, ADG learned that Sara and Kate Perrin

(Sara and Kate) were the occupants of the BMC car that collided with Carleton's car.  (*See* Docs.

39-2, 39-3.)

This Opinion and Order addresses ADG's Motion for Leave to File Third-Party

Complaint.  (Doc. 39.)  The proposed third-party complaint asserts a claim for implied

indemnification against third-party defendants Sara and Kate "for full and complete indemnity

and restitution, including but not limited to any settlement or judgment, attorney fees, litigation

costs, and other costs, and for all other compensable damages, and for such other relief as the

Court may find just and necessary."  (Doc. 39-1 at 4.)  ADG's claim asserts that any liability

ADG may have to Carleton "is secondary to the initial negligence of" Sara and Kate, who, "as a

condition of riding the BMC, . . . had an affirmative duty to safely operate their car and prevent collisions." (Doc. 39 at 5 (internal quotation marks omitted).)  According to the proposed third-party complaint, before riding the BMC, Sara and Kate were "instructed in how to use [its] braking mechanism" and "to maintain a minimum 80-foot distance between their car and the car in front of them on the track." (Doc. 39-1 at 3, ¶¶ 19, 20.)  Moreover, the proposed third-party complaint alleges that before riding the BMC, Sara and Kate "were on notice of the dangers of rearend collisions and their responsibilities to avoid them and properly operate the braking mechanism to avoid collisions." (*Id.* ¶ 21.)  Because Sara and Kate allegedly failed to maintain 80 feet of distance between their car and Carleton's car, and because they failed to properly use their car's braking mechanism, ADG claims Sara and Kate caused Carleton's alleged injuries. (*Id.* ¶ 22.)

## Analysis

### I.      Legal Standard

"A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1).  "But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." *Id.*  As more than 14 days have passed since ADG filed its Answer to Carleton's Complaint (*see* Doc. 19, filed in Vermont Superior Court on December 29, 2023), leave of Court is required to file a third-party complaint.

The purpose of the rule allowing impleader of a third party is "to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to

a defendant of a time difference between a judgment against him and a judgment i[n] his favor against the third-party defendant." *Dery v. Wyer*, 265 F.2d 804, 806–07 (2d Cir. 1959) (internal quotation marks omitted); *see Homesite Ins. Co. v. Triangle Tube/Phase III Co. Inc.*, Civil Action No. 3:16-CV-650 (CSH), 2016 WL 6902397, at *2 (D. Conn. Nov. 23, 2016) (noting that Rule 14 is designed to "promote[] judicial economy by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's claim" (internal quotation marks omitted)).  To sustain an impleader action, the third-party defendant "must be liable secondarily to the original defendant" for some or all of the damages allegedly caused by the original defendant.  *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000) (internal quotation marks omitted).  "This means that the impleader action must be dependent on, or derivative of, the main or third-party claim."  *Id.*  Impleader is often "successfully utilized" when "the basis of the third-party claim is indemnity."  *Homesite Ins. Co.*, 2016 WL 6902397, at *2 (quoting 6 Wright & Miller, *Federal Practice and Procedure* § 1446 (3d ed. April 2016); *United States v. Farr & Co.*, 342 F.2d 383, 386–87 (2d Cir. 1965)); *Sidik v. Royal Sovereign Int'l Inc.*, 2:17-cv-07020 (ADS)(ARL), 2019 WL 8275239, at *2 (E.D.N.Y. Mar. 5, 2019) ("There are three general types of third-party claims: indemnification, contribution, or subrogation.").

"The decision whether to permit a defendant to implead a third-party defendant rests in the trial court's discretion."  *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984).  In determining whether to permit impleader, the court considers four factors: "(a) whether the moving party deliberately delayed or was derelict in filing the motion; (b) whether impleading would unduly delay or complicate the trial; (c) whether impleading would prejudice the plaintiff or the third-party defendant; and (d) whether the proposed third-party complaint

states a claim upon which relief can be granted." *Hosp. for Special Care v. Mallory Indus., Inc.*,

No. 3:21-CV-00199 (SVN), 2022 WL 1050339, at *1 (D. Conn. Mar. 8, 2022) (internal

quotation marks omitted).  "[T]imely motions for leave to implead non-parties should be freely

granted to promote [judicial] efficiency unless to do so would prejudice the plaintiff, unduly

complicate the trial, or would foster an obviously unmeritorious claim." *Farrell Fam. Ventures,*

*LLC v. Sekas & Assocs., LLC*, 863 F. Supp. 2d 324, 330–31 (S.D.N.Y. 2012) (second alteration

in original) (internal quotation marks omitted)).

## II.     ADG's Motion

As discussed above, ADG seeks to implead Sara and Kate to allege a claim of implied

indemnity.  No other parties filed responses to ADG's Motion and therefore the Motion is

unopposed.

### A.       Three of the factors favor granting ADG leave to implead Sara and Kate.

With respect to the first factor, ADG has not deliberately delayed or been derelict in

filing its Motion.  ADG has demonstrated that it learned Sara and Kate's names on May 28,

2024.  (*See* Docs. 39-2, 39-3.)  ADG promptly filed its Motion within a month of that date.

Second, impleading Sara and Kate would not unduly delay or complicate the trial because

the proposed implied indemnity claim arises out of the same occurrence that is the subject of the

Complaint, i.e., a collision of BMT cars at Killington Adventure Center causing injury to

Carleton, a passenger in one of the cars.  *See Ecommission Sols., LLC v. CTS Holdings, Inc.*, 15

Civ. 2671 (KBF)(HBP), 2016 WL 6901318, at *4 (S.D.N.Y. Nov. 23, 2016) (finding that an

impleader claim would not complicate the issues presented in the case because they "arise from

the same facts that are set forth in plaintiff's . . . complaint").  The proposed third-party claim

will require additional discovery regarding Sara and Kate's alleged acts and omissions as BMT

passengers, in contrast to the Complaint's focus on only the alleged acts and omissions of

Killington and ADG as companies responsible for the manufacture, sale, and operation of the

BMT.  But the fact that impleading a third-party defendant "will require the expenditure of

additional time, effort, or money" is generally not sufficient to disallow the new filing.  *A.V. by*

*Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (considering

proposed amendments that would implead additional parties).

Third, the proposed third-party complaint would not prejudice Plaintiff or third-party

defendants.  According to the most recent Third Amended Discovery Schedule/Order, the case is

in the early discovery phase, with an Early Neutral Evaluation not scheduled to occur until

December 10, 2024 and joinder of additional parties permitted until January 13, 2025.  (*See* Doc.

47 at 3.)  As noted, the Complaint and proposed third-party complaint arise from the same set of

facts.  *See Pilkington N. Am., Inc v. Mitsui Sumitomo Ins. Co. of Am.*, No. 18 Civ. 8152 (JFK),

2021 WL 4991422, at *8 (S.D.N.Y. Oct. 27, 2021) ("When considering the prospect of

prejudice, courts in this Circuit focus on the extent to which the new claims arise from the

existing ones and whether a party had prior notice of the new claim." (internal quotation marks

omitted)).  There is ample time for additional relevant discovery and for third-party defendants to

challenge the proposed implied indemnity claim and, if necessary, prepare for trial.  Therefore,

the first three factors favor granting ADG leave to file the proposed third-party complaint.

However, the Court must also consider a fourth factor—whether the proposed third-party

complaint states a claim upon which relief can be granted.  This requires the Court to determine

whether the claim asserted in the proposed third-party complaint is "obviously unmeritorious."

*Too, Inc. v. Kohl's Dep't Stores, Inc.*, 213 F.R.D. 138, 142 (S.D.N.Y. 2003) ("The Court may

consider the merits of a proposed third-party claim . . . to the extent that the third-party complaint

would foster an obviously unmeritorious claim." (internal quotation marks omitted)).  If the claim is obviously unmeritorious, the filing should not be allowed.  *ACE Am. Ins. Co. v. Sprain Assocs., LLC*, No. 1:20-CV-4296 (MKV), 2021 WL 1687277, at *4 (S.D.N.Y. Apr. 29, 2021) ("[A] court may deny leave to file a third-party complaint that would foster an obviously unmeritorious claim." (internal quotation marks omitted)); *Wilson v. Home Depot U.S.A., Inc.*, No. 3:11-CV-1000 (SRU), 2012 WL 5463298, at *2 (D. Conn. Nov. 8, 2012) ("Because [defendant's] proposed third-party complaint would only foster an obviously unmeritorious claim, impleader is inappropriate and the motion must be denied." (citation and internal quotation marks omitted)).

The analysis turns on the substantive law applicable to the proposed claim.  *See, e.g.*, *Matson by Kehoe v. Anctil*, 979 F. Supp. 1031, 1037 (D. Vt. 1997) (denying motion for leave to file third-party complaint because it "fails to state a claim upon which relief can be granted").  As this Court has explained, "[i]mpleader is proper 'only when a right to relief exists under the applicable substantive law.'"  *Id.* at 1036 (quoting *Eagle Star Ins. Co. v. Metromedia, Inc.*, 578 F. Supp. 184, 187 (D. Vt. 1984)).  "If for example, the governing law does not recognize a right to contribution . . . , impleader for these purposes cannot be allowed."  *Id.* (omission in original) (internal quotation marks omitted); *McMillan v. Equifax Credit Info. Servs., Inc.*, 153 F. Supp. 2d 129, 131 (D. Conn. 2001) ("Rule 14 does not itself provide a third-party cause of action, and impleader is permitted only when a right to relief is cognizable under the applicable substantive law." (internal quotation marks omitted) (citing 6 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1446 (1990) ("If . . . the governing law does not recognize a right to contribution or indemnity, impleader for these purposes cannot be allowed."))).

Therefore, the Court next considers whether ADG's proposed thirty-party complaint

states a claim on which relief may be granted.

      **B.**      **Under the fourth factor, an implied indemnity claim against Sara and Kate is obviously unmeritorious.**

ADG proposes to file a third-party complaint to assert an implied indemnity claim against Sara and Kate. As this lawsuit is in federal court on the basis of diversity jurisdiction, the Court applies Vermont substantive law to the proposed claim. *See Bisson v. Reppel*, Civil Action No. 2:13-cv-245, 2014 WL 3386059, at *2 (D. Vt. July 9, 2014); *Matson*, 979 F. Supp. at 1034, 1035 ("In diversity cases, a federal court must follow the choice of law rules of the state in which it sits. . . . [In Vermont,] [t]he place where the injury and the conduct causing injury occurred is relatively more important . . . than the place where [the relevant] relationship[s] [are] centered, or where the parties reside."); *Eagle Star*, 578 F. Supp. at 187 ("Since this is a diversity action, the court is called upon to apply the law of Vermont regarding indemnification.").

Under Vermont law, "there is no right to contribution among joint tortfeasors." *Loli of Vermont, Inc. v. Stefandl*, 968 F. Supp. 158, 161 (D. Vt. 1997). However, Vermont law recognizes a right of indemnity if: (1) there is an express agreement by one party to indemnify another, or (2) "circumstances are such that the law will imply such an undertaking." *Id.* (citing *Peters v. Mindell*, 159 Vt. 424, 427–28, 620 A.2d 1268 (1992)). ADG does not allege that Sara and Kate expressly agreed to indemnify ADG. The proposed complaint instead asserts an implied indemnification claim.

"Indemnification accrues to a party who, without active fault, has been compelled by some legal obligation, such as a finding of vicarious liability, to pay damages occasioned by the negligence of another." *Knisely v. Cent. Vermont Hosp.*, 171 Vt. 644, 646, 769 A.2d 5, 8 (2000) (internal quotation marks omitted). "The relationship of the parties must be 'such that the obligations of the alleged indemnitor extend not only to the injured person, but also to the

indemnitee.'" *Loli*, 968 F. Supp. at 161 (quoting *Hiltz v. John Deere Indus. Equip. Co.*, 146 Vt.

12, 14–15, 497 A.2d 748, 751 (1985)).  The right of indemnity, "because of some special

relationship existing between two tortfeasors[,] shifts the entire loss upon the real wrongdoer."

*Viens v. Anthony Co.*, 282 F. Supp. 983, 986 n.2 (D. Vt. 1968) (internal quotation marks

omitted); *Corbeil v. Blood*, No. 5:10-cv-56, 2011 WL 2270403, at *4 (D. Vt. June 6, 2011)

("[I]mplied indemnity requires one party to reimburse the other entirely."); *LNC Invs., Inc. v.

First Fid. Bank, N.A.*, 935 F. Supp. 1333, 1352 (S.D.N.Y. 1996) ("Unlike contribution,

indemnification does not reallocate a portion of liability; rather, it shifts liability from one party

to another.").

      "Because of the rule against contribution among joint tortfeasors and the fact that

indemnification shifts the entire loss from one party to another, one who has taken an active part

in negligently injuring another is not entitled to indemnification from a second tortfeasor who

also negligently caused the injury." *White v. Quechee Lakes Landowners' Ass'n, Inc.*, 170 Vt.

25, 28–29, 742 A.2d 734, 736–37 (1999) (emphasis and citation omitted); *see Peoples'

Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir. 1986) ("Tort-

based indemnification, or 'implied in law' indemnity, is designed to allocate the cost of

negligence to the joint tortfeasor primarily responsible.  Application of this theory is warranted,

therefore, when the proposed indemnitor has breached a duty to a third party but the proposed

indemnitee has paid the third party for the loss attributable to that breach." (citations omitted)).

Indemnity will be imputed "only when equitable considerations concerning the nature of the

parties' obligations to one another or the significant difference in the kind or quality of their

conduct demonstrate that it is fair to shift the entire loss occasioned by the injury from one party

to another." *White*, 170 Vt. at 29, 742 A.2d at 737 (citing W. Keeton, *Prosser and Keeton on the*

*Law of Torts* § 51, at 344 (5th ed. 1984)); *Provencher v. Bimbo Bakeries USA, Inc.*, Case No.

2:22-cv-198, 2023 WL 8436279, at *8 (D. Vt. Dec. 5, 2023) (holding that "[implied]

indemnification serves as an equitable transfer of liability in cases where fault properly lies with

a third party"); *LNC Invs.*, 935 F. Supp. at 1352 (holding that "a third-party claim for implied

indemnification is not tenable when the plaintiff's claims against the third-party plaintiff are

based upon the third-party plaintiff's own duties, acts or omissions").  Implied indemnification

"is usually appropriate only when the indemnitee is vicariously or secondarily liable to a third

person because of some legal relationship with that person or because of the indemnitee's failure

to discover a dangerous condition caused by the act of the indemnitor, who is primarily

responsible for the condition."  *White*, 170 Vt. at 29, 742 A.2d at 737 (citing *Viens*, 282 F. Supp.

at 986); *see Heco v. Foster Motors*, 2015 VT 3, ¶ 10, 198 Vt. 377, 382, 114 A.3d 902, 905

(2015) ("It is axiomatic that a party seeking implied equitable indemnity may recover only where

its potential liability is vicariously derivative of the acts of the indemnitor and it is not

independently culpable."); *Too, Inc. v. Kohl's Dep't Stores, Inc.*, 213 F.R.D. 138, 1444

(S.D.N.Y. 2003) (denying motion for leave to file third-party complaint based on "dubious merit

of . . . indemnification claim," where third-party plaintiff "could not escape all liability by

relegating to [third-party defendants] the entire responsibility for any alleged wrongdoing on its

part").

　　　　The Vermont Supreme Court's application of these principles is instructive to this case.

For example, the Court has found that an automobile manufacturer held strictly liable was

entitled to indemnity from the manufacturer of the defective part.  *See Morris v. Am. Motors*

*Corp.*, 142 Vt. 566, 576, 459 A.2d 968, 974 (1982).  Similarly, a wholesaler who had inserted a

thermometer in a banana was held liable to indemnify a retailer who had settled with a customer

injured after biting into the thermometer.  *See Digregorio v. Champlain Valley Fruit Co.*, 127 Vt.

562, 255 A.2d 183 (1969).  Likewise, a hotel owner with a nondelegable duty to keep the

premises reasonably safe was entitled to indemnity from the contractor who created a hazard in

repairing a hotel door.  *See Bardwell Motor Inn, Inc. v. Accavallo*, 135 Vt. 571, 572, 381 A.2d

1061, 1062 (1977).  In deciding these cases, the Vermont Supreme Court has adopted the

following rule found in Restatement of Restitution § 95 (1937):

> Where a person has become liable with another for harm caused to a third person
> because of his negligent failure to make safe a dangerous condition of land or
> chattels, which was created by the misconduct of the other or which, as between
> the two, it was the other's duty to make safe, he is entitled to restitution from the
> other for expenditures properly made in the discharge of such liability, unless after
> discovery of the danger, he acquiesced in the continuation of the condition.

*Id.* at 573, 381 A.2d at 1062; *see Peters*, 159 Vt. at 428, 620 A.2d at 1270–71.  These cases

illustrate the two circumstances required to find an implied right of indemnity.  First, "the

indemnitee must be free from active fault."  *Loli*, 968 F. Supp. at 162.  Second, "the duty at issue

must extend both to the injured person and the indemnitee."  *Id*.; *see Morris*, 142 Vt. at 576, 459

A.2d at 974 (holding that "[implied] indemnity is a right accruing to a party who, without active

fault, has been compelled by some legal obligation, such as a finding of vicarious liability, to pay

damages occasioned by the negligence of another").

The Court concludes that ADG's proposed implied indemnification claim against Sara

and Kate is obviously unmeritorious.  The claim would have merit only if: (1) the circumstances

under which ADG designed and sold the BMT to Killington are such that ADG has a right to

indemnification from Sara and Kate as passengers on the BMT; and (2) ADG was not at fault for

Carleton's injuries but was only vicariously liable, as the designer and seller of the BMT, for

Sara and Kate's negligence.  *See Chapman v. Sparta*, 167 Vt. 157, 161, 702 A.2d 132, 135

(1997).  Neither of these circumstances is present here.  First, the Court is aware of no law

according the designer and seller of a potentially dangerous product a right to indemnification

from the end users (or passengers in this case) of that product for the product's alleged safety-

related design defects.  *See, e.g.*, *Allen v. Leopold*, No. 1:14-CV-22-jgm, 2015 WL 4600533, at

*3 (D. Vt. July 29, 2015) ("Under Vermont law, [a defendant] is not entitled to indemnification

for his own negligence.").  Second, Carleton's Complaint unambiguously alleges that ADG itself

was at fault for Carleton's injuries, given that "[t]he BMC's inherent design, particularly the lack

of a fail-safe collision prevention mechanism, as well as adequate safety restraints for

passengers, made it dangerous to intended and foreseeable users" (Doc. 6 at 3, ¶ 21); and that

defect "was an actual, direct[,] and proximate cause of [Carleton's] injury" (*id.* ¶ 22).  The

proposed third-party complaint does not allege vicarious liability based on any agent-principal,

employer-employee, or other relationship.  Rather, it seeks indemnification from Sara and Kate

in the amount for which ADG may be found liable to Carleton.  Relevant here, the Vermont

Supreme Court recently held that where there is no legal relationship between defendant and

third-party defendants, and where the proposed third-party complaint "allege[d] that third-party

defendants' independent actions caused plaintiffs' injury," there is "no[] . . . basis for implied

indemnity."  *Haupt v. Triggs*, 2022 VT 61, ¶ 12, 217 Vt. 382, 388, 295 A.3d 845, 850.

 If, as Carleton alleges, the BMT's design "lack[ed] . . . a fail-safe collision prevention

mechanism, as well as adequate safety restraints for passengers," making it "dangerous to

intended and foreseeable users" (Doc. 6 at 3, ¶ 21), no act or omission of passengers Sara and

Kate would warrant shifting the entire loss to them, as required to plead implied indemnity under

Vermont law.  Indeed, one of the principal purposes of a "fail-safe collision prevention

mechanism" would be to prevent a collision in a situation where passengers in a BMT car

neglected to properly employ the brakes in an accident situation.  Should ADG be found liable

for a design defect, ADG would not be "without active fault," and therefore an indemnity claim against Sara and Kate would not lie.  On the other hand, if ADG successfully defends against the design defect claim, there is no loss for Sara and Kate to indemnify.

In an analogous case alleging, in part, negligence in the design and manufacture of a hydraulic lift gate that caused the death of plaintiff's spouse, the manufacturer impleaded several third-party defendants.  In dismissing third-party defendants from the case, this Court explained that "[a]n implied indemnity arises only where a party incurs liability without active fault on its part."  *Viens*, 282 F. Supp. at 987.  The Court reasoned that if plaintiff proved the design defect claim, then defendant would be "culpable of active fault as a matter of law," rendering impleader improper.  *Id*.  *Viens* drew a distinction between the plaintiff's right to pursue all parties responsible for plaintiff's injuries and a defendant's right to implead third-party defendants. "These third parties may be liable to plaintiff, but the test under Rule 14 is whether they may be liable to [defendant].  Since the plaintiff's original complaint cannot be reasonably interpreted as including an allegation of 'passive or secondary' negligence[2] on [defendant's] part, [defendant's] third-party complaint must fail."  *Id*.  As there is no claimed legal relationship between ADG and Sara and Kate, impleader is not proper.

Similarly, the Vermont Supreme Court has declined to impose an "implicit obligation upon the purchaser of a product to indemnify the manufacturer."  *Hiltz*, 497 A.2d at 751. "[U]nder Vermont law, one is not entitled to indemnity from a joint tortfeasor merely because one may be free from negligence, or another is more at fault."  *Id*.

---

[2]  *Viens* explained that "[t]he difference between private and secondary liability is not based on the difference in degrees of negligence or on any doctrine of comparative negligence . . . . It depends on a difference in the character or kind of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the person."  282 F. Supp. at 986.  Instructive to this case, "the important point to be noted in all of the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relationship between the parties."  *Id*.

ADG has not cited law authorizing the company that designed and sold a roller coaster or other amusement ride to bring an implied indemnity claim against passengers of the ride.  To the contrary, where a manufacturer and seller of a product is in the best position to know the dangers inherent in that product, it is likewise in the best position to determine which safety devices should be employed to prevent injuries.  Furthermore, any duty that Sara and Kate may have had to apply the BMC's brakes to avoid a collision was owed to other BMC passengers such as Carleton riding in the car in front of them.  Sara and Kate did not owe a duty to ADG as the manufacturer and seller of the BMT.  *Cf., e.g.*, *In re Gen. Dynamics Asbestos Cases*, 539 F. Supp. 1106, 1110 (D. Conn. 1982) ("It is well accepted that a purchaser of a product undertakes no implicit obligation to reimburse the manufacturer or supplier thereof, who itself is found to have breached a duty to the plaintiff, for any losses caused by the purchaser's negligent use of the manufacturer's or supplier's product." (citing *Dulin v. Circle F Indus., Inc.*, 558 F.2d 456, 464 (8th Cir. 1977); *Santisteven v. Dow Chem. Co.*, 506 F.2d 1216, 1219–20 (9th Cir. 1974); *Oman v. Johns-Manville Corp.*, 482 F. Supp. 1060, 1063 (E.D. Va. 1980)); *Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714 (2d Cir. 1978) (holding that a purchaser of goods does not impliedly agree to indemnify its supplier, who itself has breached a duty to the plaintiff, for losses due to the purchaser's negligent use of the supplier's product).

## Conclusion

For these reasons, the Court DENIES ADG's Motion for Leave to File Third-Party Complaint (Doc. 39).

15

Dated at Burlington, in the District of Vermont, this 28th day of August 2024.


                                        */s/ Kevin J. Doyle*
                                        United States Magistrate Judge